IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ELAINE L. CHAO, Secretary of Labor, United States Department of Labor, | : : : | |
| Plaintiff, | : : | CIVIL ACTION NO. |
| vs. | : : | 1:03-CV-2581-CC |
| LOCAL 527-S, GRAPHIC COMMUNICATIONS UNION OF THE GRAPHIC COMMUNICATIONS INTERNATIONAL UNION, AFL-CIO, | : : : : : : | |
| Defendant. | : | |

## ORDER

The court having read and considered Plaintiff's Motion for Summary Judgment [Doc. No. 14] and Defendant's Motion for Summary Judgment [Doc. Nos. 11 and 18]; and the Court having read and considered the parties' respective responses thereto and replies in support thereof; and the Court having reviewed and considered the entire record in the case; and the Court having conducted a hearing on the motions for summary judgment; and the Court having carefully weighed and considered the merits of the parties' respective positions; and the Court having applied the applicable law thereto, for the following reasons, the Court hereby **GRANTS** Plaintiff's motion for summary judgment, and **DENIES** Defendant's motion for summary judgment. Defendant's December 2002 election is declared void, and Defendant is ordered to hold a new election under the supervision of the Secretary of Labor.

## I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff the Secretary of Labor has filed this action pursuant to Title IV of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 482(b)

("LMRDA"), challenging the December 2002 election of Defendant Local 527-S ("Local 527-S" or "the Local"), Graphic Communications Union of the Graphic Communications International Union, AFL-CIO-CLC ("GCIU").  The Secretary alleges that the Local's election suffered from several material deficiencies that resulted in violations of the LMRDA, that the election should be declared void and a new election held under the Secretary's supervision.  29 U.S.C. § 482(c).

Both parties agree that the following material facts are not in dispute: Defendant Local 527-S is a local labor organization subject to the requirements of the LMRDA.  The Local held an election in December 2002, for the offices of President, Vice-President, Secretary-Treasurer-Business Agent, Recording Secretary, and Sergeant at Arms.  It was the Local's first contested election in twenty to thirty years.  Ralph Meers, the Local's current President, has served as President for over forty years.  At the time the election was held, the Local had more than 1,000 members.

    A.    *Notice of Nominations and Election*

On January 1, 2002, the Local posted a notice at the main union hall in Mableton, Georgia, and at other job sites consisting of a list of the scheduled dates and the times of the Local Executive Board meetings, the regular monthly meetings, and the officers and stewards training sessions for 2002.  (See Exhibit 2 to Plaintiff's Motion for Summary Judgment.)[1]  The notice indicated that eight regular monthly meetings would be held in 2002, including a meeting on November 10, 2002.  The notice did not indicate when nominations for union officer election would be conducted, nor did the notice specify the place of the nominations meeting or the procedure for submitting nominations.

The Local subsequently posted a notice dated September 16, 2002, and entitled, "NOMINATION AND ELECTION OF OFFICERS," at the union hall and at job sites.

---

[1] All numerical exhibits cited herein refer to the exhibits attached to Plaintiff's Motion for Summary Judgment.

The notice indicated that nominations would be accepted at the "November 2002" regular monthly meeting, and listed the offices to be filled. (Exh. 1.) The September notice instructed the members to "observe the Union bulletin board for the date and time of the nominations," but did not itself specify the date, time, or place of the nominations meeting. No other nominations notices were posted by the Local.

On November 10, 2002, the Local held a nominations meeting at the Mableton union hall. Only approximately 25 rank-and-file members attended that meeting. The Board announced its endorsements for all candidates, including Ralph Meers for President. Paul Alexander, the person who would ultimately bring complaints about the election to the attention of the Secretary of Labor, was nominated for President from the floor. Therefore, the two nominees for President were incumbent President Ralph Meers and Mr. Alexander. No other nominations for any officer positions were made.

The Local did not notify its members by mail than an election would be held in December 2002 for the purpose of electing officers.

   B.  *Mr. Alexander's Requests for Information*

By letter to the Local dated October 29, 2002, Mr. Alexander requested a membership list of Local members and the names and addresses of the shops in the Local for campaign purposes. (Exhs. 4, 13.) President Meers responded by letter dated November 21, 2002, stating that Mr. Alexander's request would be considered at the December 5, 2002 Executive Board meeting, just three days before the election. (Exh. 5.)

On November 18, 2002, Mr. Alexander wrote to GCIU, reporting that he had requested the names and addresses for the membership, but that the Executive Board had put off a decision until December 5. (Exh. 6.) The Local claims it is not its policy or the policy of the GCIU to provide members' names and addresses to individuals other than under the Local's supervision. President Meers responded to Mr. Alexander's request for names and addresses of Local members on November 25,

- 3 -

2002.  (See Exh. 13 at 3.)  After President Meers notified Mr. Alexander that mailing labels would be made available for a campaign mailing on November 25, 2002, Mr. Alexander assembled his materials and mailed them out on December 2, 2002.  (See id.)  The Local disputes it did not provide a response to Mr. Alexander's request for the names of the shops outside of the metro-Atlanta area, or for the dates, locations and times for balloting at those shops, but has not presented any specific information as to when or how this information was made available to Mr. Alexander.

      C.    *December 2002 Election*

On December 8, 2002, an election was conducted at the main union hall located in Mableton.  Prior to that date, on-site voting had been concluded at the various shop locations located outside the Atlanta regional area because the ballots of the members voting in those areas had to be received by the union no later than December 8, 2002.  (See Exh. 13 at 3-4.)  By the time Mr. Alexander made his campaign mailing on December 2, 2002, some of the balloting in the outlying areas had already occurred.  Specifically, 130 ballots, voted at Cleveland, Tennessee, and Charlotte, North Carolina, were mailed by the chapel chairpersons to the Local on December 3, 2002, the day after Mr. Alexander mailed his campaign literature.

Members of the Local voted in the election by paper ballot.  The Secretary alleges that the Local failed to conduct an election by "secret ballot," in the polling locations in Mableton, Georgia; Charlotte, North Carolina; LaGrange, Georgia; Cleveland, Tennessee; and Lexington, Kentucky (all locations except for Spartanburg, South Carolina), because it did not provide any arrangements for a voter to cast his ballot in privacy.  The Local contends that voters had the option in the polling places to move about or mark ballots without anyone seeing the ballots.

The final tally of the ballots after the election revealed that incumbent President Ralph Meers received 191 votes and Paul Alexander received 74 votes, a margin of victory of 117 votes.  (Exh. 9.)

D.   *Mr. Alexander's Election Protest*

Mr. Alexander filed an election protest with George Tedeschi, GCIU President, on December 10, 2002, two days after the election, and sent a copy of that protest to the Local. (Exh. 11.) (The Local was chartered by and is subordinate to the GCIU.) The Local's Constitution and By-laws do not contain a provision governing election protests, although the Local's By-laws include a provision (at Article 1, section 6) that requires a member to exhaust remedies pursuant to the GCIU Constitution and Laws.[2] Mr. Alexander's letter of December 10 stated:

> I wrote you letter pertaining to all the violations Mr. Meers was committing during the election to block members from voting for me as President of Local 527-S. Since then, the election has taken place and I lost. Furthermore, I did not have any knowledge of the date, time or places of the elections in the other states where we have shops in the local.
>
> Some members were not able to vote because they had to work and the voting was not done by secret ballot. Therefore, I protest the election. If possible, please respond to this letter within 15 days.

(Exh. 11.) Mr. Tedeschi replied to Mr. Alexander by letter dated December 18, 2002, stating again that he would be seeking a statement from President Meers, and after receipt of such statement, he would be ruling on Mr. Alexander's complaint and advising Mr. Alexander and the Local of his decision. Exh. 18.

On or about January 3, 2003, Mr. Alexander received a letter from James Parker, Chairman of the Election Committee for Local 527-S, informing him that the Executive Board of the Local had scheduled a hearing on his "complaint and challenge against the Local Officers election" on January 9, 2003. Accordingly, on

---

[2]   Article 1, section 6 of the Local's Bylaws states:

> It shall be the duty of any member or subordinate body who feels aggrieved by any action, decision, or penalty imposed upon him or it, to exhaust his or its remedy and all appeals therefrom under the laws of this International Union prior to appealing to a civil court or governmental agency for redress. Failure to comply with this duty shall be cause for expulsion.

- 5 -

January 9, Mr. Alexander appeared before the Board.

The Board issues a written decision on Mr. Alexander's complaints in the form of a letter from President Meers to Mr. Alexander dated February 11, 2003. (Exh. 13.) The six-page letter addressed Mr. Alexander's complaints regarding: (a) the nominations notices; (b) the nominations process; (c) his request for access to membership information; (d) his request to reopen the nominations; (e) his request to remove officers from the nomination and election committees; (f) his claim that he did not have knowledge of the dates, times, and locations of elections in outlying areas; (g) his claim that some members were unable to vote because they had to work; and (h) his claim that voting was not conducted by secret ballot. (Id.) After addressing each of these issues in turn, President Meers' letter concluded:

> After reviewing all charges made by Mr. Alexander and the facts concerning such charges, it is the position of the Executive Board that all charges are without merit and no violation of the Constitution and By-Laws or (LMRDA) [sic] laws occurred and *all charges are dismissed.*

(Exh. 13 at 6) (emphasis added). The letter did not include any instructions as to how to appeal the decision to the membership, to the GCIU, or to anyone else.

After receiving the Board's decision, Mr. Alexander appealed the decision to the GCIU by letter to Mr. Tedeschi dated February 16, 2003. (Exh. 14.) Mr. Tedeschi responded by letter dated February 27, 2003, stating that he would not rule on the issues:

> Under the International Constitution, a member may appeal an action of a Local to my office, only after having exhausted all of the Local's internal Union remedies. The Local Executive Board considered your election challenge at its meeting of February 6th and advised you of its findings by certified letter dated February 11th. I believe that under the Local's Constitution, all decisions of the Local Executive Board are subject to being reported and voted upon by the membership. Thus, you have a right to persuade the membership that the decision of the Local Executive Board with respect to your election challenge is incorrect and should be overruled by the membership. Since you have not fully exhausted your internal Local Union remedies I do not have the constitutional authority to rule on your appeal from the Local's decision.

(Exh. 15.) Mr. Tedeschi's letter further advised Mr. Alexander of his right to appeal

- 6 -

Mr. Tedeschi's decision not to rule on the election challenge to the International General Board, and gave explicit instructions on the filing of such an appeal. (Exh. 15.) Mr. Alexander appealed Mr. Tedeschi's decision not to rule on his complaint to the GCIU General Board by letter dated March 10, 2003. See Exhs. 19, 22.[3]

Mr. Alexander simultaneously pursued an inquiry regarding the procedure for an election protest with President Meers by letter dated March 19, 2003 (and copied to Mr. Tedeschi). (Exh. 20.) The letter stated, "In response to the letter I received from the International President, George Tedeschi, dated February 27, 2003, I would like to know if there is any other appealling [sic] process through the Local Union that I can persue [sic], since receiving the executive board's decision dated February 11, 2003." President Meers did not respond to Mr. Alexander's letter of March 19.

After Mr. Alexander received Mr. Tedesci's letter of February 27, he filed a complaint with the Office of Labor-Management Standards ("OMLS") on March 11, 2003 (received by OMLS on March 13). (See Exh. C to Defendant's Brief in Support of Motion for Summary Judgment.) Alexander sent a second letter to the OMLS on April 7, 2003, reporting that he had not received a response from the Local or the GCIU to his letter of March 19, and stating that he would like to pursue a complaint through the Department of Labor. (Exh. 21.)

Thereafter, the Secretary conducted an investigation of the Local's election, found the deficiencies alleged herein, and timely filed her Complaint with this Court.

## II.   **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment should be entered whenever "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he burden on the

---

[3] By letter dated July 8, 2003, the General Board of the GCIU denied Mr. Alexander's appeal.

moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).[4]

## III.   DISCUSSION

### A.   *Exhaustion of Union Remedies*

The Local's motion summary judgment is based on an argument that complainant Alexander did not exhaust available union remedies prior to filing a complaint with the Secretary of Labor, as required by 29 U.S.C. § 482(a).[5] The Court makes the following findings and conclusions as to the Local's motion for summary

---

[4]   A court may properly grant summary judgment in actions brought under the LMRDA. See Brennan v. Local Union No. 639, Int'l Brotherhd. of Teamsters, Chauffers and Warehouseman and Helpers of Am., 494 F.2d 1092, 1094-97 (D.C. Cir. 1974). The summary judgment standard, however, "cannot be analyzed in a vacuum, but can only be understood in the context of the statute under which the action was brought since the statute determines (a) what the material facts are and (b) when a party is entitled to judgment as a matter of law." Id. at 1096-97.

[5]   A member of a labor organization -

> (1) who has exhausted the remedies available under the constitution and bylaws of such organization and of any parent body, or
>
> (2) who has invoked such available remedies without obtaining a final decision within three calendar months after their invocation,

may file a complaint with the Secretary within one calendar month thereafter alleging the violation of any provision of section 481 of this title (including violation of the constitution and bylaws of the labor organization pertaining to the election and removal of officers).

29 U.S.C. § 482(a).

- 8 -

judgment:

1. On December 8, 2002, Local 527-S conducted an election to which complainant Paul Alexander protested in a letter dated December 10, 2002.

2. Mr. Alexander was obligated to give Local 527-S and the GCIU a fair opportunity to resolve the matter between December 10, 2002, the date on which Mr. Alexander invoked his union remedies, and March 10, 2003. See 29 U.S.C. § 482(a)(2) (allowing a union member to file a complaint with the Secretary of Labor after the union member has invoked remedies available through the union "without obtaining a final decision within three calendar months").

3. Neither the Constitution and By-Laws of Local 527-S nor the Constitution and Laws of the GCIU set forth responsible and responsive procedures for investigating and redressing members' elections grievances as required by Wirtz v. Local Union No. 125, Laborer's Int'l Union of North America, AFL-CIO, 389 U.S. 477, 484, 88 S. Ct. 639, 19 L. Ed. 2d 716 (1968).

4. In making the finding in the paragraph above, the Court has not disregarded its obligation to give deference to a union's good faith interpretation of its own constitution and by-laws. See Department of Labor v. Aluminum, Brick Glass Workers Int'l Union, Local 200, 941 F.2d 1172, 1177 (11th Cir. 1991) (stating that a "union's interpretation of its own bylaws and constitution is entitled to deference"). However, "[t]he union's interpretation of its own documents will be respected only to the extent it is fair and reasonable." Id. Here, the Court is of the opinion that the Defendant's interpretation is not fair and reasonable because Local 527-S relies on provisions that do not pertain specifically to election protests, and there are no provisions in either the Constitution and By-Laws of Local 527-S or the Constitution and Laws of the GCIU that pertain specifically to election protests at the Local level.[6]

---

[6] Article XIII, Section 17, of the GCIU Constitution and Laws contains a provision governing challenges by members of a Local to an election held at the GCIU

Thus, to dismiss the Complaint in the instant case based on Mr. Alexander's failure to adhere to the provisions relied on by Local 527-S would not serve the aim of Title IV of the LMRDA, which is to remedy abuses in union elections and to ensure that union elections comply with fair and democratic processes.

5. In the absence of an established grievance procedure specific to election protests at the Local level, the Court looks to determine whether the actions taken by Mr. Alexander to protest the election were reasonable under the circumstances. See Donovan v. Sailors' Union of Pacific, 739 F.2d 1426, 1428 (9th Cir. 1984); Dole v. United Auto., Aerospace & Agricultural Implement Workers, 970 F.2d 1562, 1568 (6th Cir. 1992). In considering the reasonableness of Mr. Alexander's actions in this case, the Court is mindful that the exhaustion requirement's purpose is to allow unions the chance to remedy Title IV violations without government intrusion. Donovan v. CSEA Local Union 1000, 761 F.2d 870, 874 (2d Cir. 1985). "[A] heavy burden is imposed on the union to demonstrate that it did not have adequate notice of the protest, keeping in mind that 'members should not be held to procedural niceties while seeking redress within their union.'" Id. at 874 (quoting Hodgson v. Local 6799, United Steelworkers, 403 U.S. 333, 341 n. 6, 91 S. Ct. 1841, 29 L. Ed. 2d 510 (1971)).

With the aforementioned principles in mind, the Court finds that Mr. Alexander acted reasonably under the circumstances. Mr. Alexander wrote a letter to Local 527-S and a letter to the GCIU to notify them of problems he had with the nominations process before the election even occurred. Following the election of December 8, 2002, Mr. Alexander wrote a letter to the GCIU dated December 10, 2002, to protest the election. The president of the Local was copied on that letter. After Local 527-S denied Mr. Alexander's protest, Mr. Alexander wrote another letter to the GCIU dated February 16, 2003, to appeal Local 527-S' denial of his protest.

---

level, but it does not apply to Local elections. The parties do not argue that this provision applies here.

Both of these letters were written within the three-month time period that Local 527-S and the GCIU had to render a final decision on Mr. Alexander's grievances. Although the president of the GCIU advised Mr. Alexander in a letter dated February 27, 2003, that he "believe[d]" the Local 527-S' Constitution and By-Laws required Mr. Alexander to appeal to the membership prior to appealing to the GCIU, neither Local 527-S nor the GCIU gave Mr. Alexander instructions as to the procedure for appealing to the membership, and that procedure was not outlined in any written document.

Granted, Mr. Alexander did not write a letter to the president of Local 527-S to inquire about any other appealing process available to him through Local 527-S until March 19, 2003, which was after the three-month period. However, this letter missed the three-month deadline by only nine (9) days. The Court is of the opinion that Plaintiff's Complaint should not be barred on this basis, particularly since there is no dispute that both Local 527-S and the GCIU were on notice of Mr. Alexander's complaints regarding the nominations and the election. See Donovan v. Local 3122, Communication Workers of America, 740 F.2d 860, 862 (11th Cir. 1984) (missing deadline imposed by union by two or three days was an "exceedingly technical violation" that did not warrant dismissal of the complaint). The fact that President Meers did not even respond to Mr. Alexander's letter, irrespective of the date on which the letter was sent, suggests to the Court that Local 527-S never had a genuine interest in investigating and remedying the violations complained of by Mr. Alexander without government intervention.

6.     Because the "exhaustion requirement is not to be applied inflexibly," Donovan v. Local 1235, International Longshoremen's Ass'n, 715 F.2d 70, 74 (3d Cir. 1983) (citing Hodgson, 403 U.S. at 340-41), the Court finds that proceeding to look at the merits of this case is warranted and within the subject matter jurisdiction of this Court. Mr. Alexander protested the election to both Local 527-S and the GCIU, and Local 527-S denied the protest. Based on the GCIU president's prior statement that

he would rule on Mr. Alexander's protest after receiving input from the Local, Mr. Alexander then appealed the Local's denial of the protest to the GCIU. Only then did the GCIU tell Mr. Alexander that he believed the Local's Constitution and By-Laws required him to appeal to the membership. The Court finds this fact troubling, particularly since appealing to the membership to protest an election is mentioned nowhere in the Local's Constitution and By-Laws. It is clear to the Court that Mr. Alexander reasonably attempted to invoke union remedies without satisfaction. Both Local 527-S and the GCIU had a fair opportunity to consider and address the alleged violations in a timely manner, but they did not render a final decision within three months. Thus, the Court holds that the exhaustion requirement was satisfied in this case pursuant to 29 U.S.C. § 482(a)(2).

    B.    *Violations of the LMRDA*

Having reached the merits of the Secretary's allegations, the Court makes the following findings and conclusions with respect to the Secretary's motion for summary judgment:

1.    The Court's review of the record in this case indicates that the election at issue did not comply with Title IV of the LMRDA.

    a.    First, it is uncontested that Local 527-S did not mail notice of the election to its members in violation of 29 U.S.C. § 481(e). See Brennan v.. International Brotherhd. of Teamsters, Local 639, 494 F.2d 1092, 1097-98 (D.C. Cir. 1974) ("Congress intended at a minimum that notice be mailed to each member" at his last known address, "and that other means, however reasonable, were insufficient."); Marshall v. Office & Professional Employees Union, Local 2, 505 F. Supp. 121, 123 (D.D.C. 1981) (stating that the LMRDA "clearly and unambiguously requires that notice of the election be sent to the last known home address of each union member.")

    b.    Second, in violation of 29 U.S.C. § 481(b), the election was not conducted by secret ballot in polling locations (except Spartanburg, South Carolina)

because the Local did not provide any voting booths, partitions, or any other physical arrangements that would permit privacy for a voter while he marked his ballot. See Donovan v. CSEA Local Union 1000, American Federation of State, County and Municipal Employees, 594 F. Supp. 188, 196 (N.D.N.Y. 1984), aff'd in part and rev'd in part on other grounds, 761 F.2d 870 (2d Cir. 1985); Marshall v. Local Union 12447, United Steelworkers, 591 F.2d 199, 203-04 (3d Cir. 1978); Brennan v. Local Union 3489, United Steelworkers, 520 F.2d 516, 522 (7th Cir. 1975), aff'd on other grounds, 429 U.S. 305 (1977); Bachowski v. Brennan, 413 F. Supp. 147, 150-51 (W.D. Pa. 1976), appeal dismissed for lack of final order, 545 F.2d 363 (3d Cir. 1976).[7]

        c.        Third, Local 527-S did not provide members a reasonable opportunity for the nomination of candidates in violation of 29 U.S.C. § 481(e) because the posted notices regarding the nominations meeting did not include the date, time, or location of the nominations meeting. See Donovan v. International Ass'n of Machinists, Local Lodge 851, 622 F. Supp. 394, 396-97 (N.D. Ill. 1985) (concluding that even though it was possible for a member after some effort at piecing together and construing the information to arrive at the date of the nominations meeting, there was no way that even an exceptionally diligent union member could have arrived at the time and the place for the meeting). In addition, members of Local 527-S were not informed of the procedure for making nominations.

        d.        Fourth, insofar as 29 U.S.C. § 481(c) grants candidates the right to have an observer at polling places to ensure a fair election, Local 527-S also

---

[7] At the hearing on the summary judgment motions, the Local took the position that the voters had the option in the polling places to move about or mark ballots without anyone seeing them. Based on the undisputed facts, the Local has failed to persuade this Court that it discharged its statutory obligation to provide a secret ballot election. See Marshall v. Local 15015, United Steelworkers, 98 LRRM (BNA) 2493, 2493 (N.D. Ala. 1978) (physical arrangement that would assure the secrecy of the ballot could have been as simple as controlling the flow of people in the room, and policing the room to see that they left promptly after casting their ballot.)

violated this provision by not providing sufficient notice of the date, sites, and hours of polling to the members and candidates.  See Independent Employees Union of Packerland Packing, 1970 WL 5444 (W.D. Wis. April 23, 1970), 74 LRRM (BNA) 2137 (finding that the union had not provided adequate safeguards where a labor organization failed to permit candidates to have observers throughout the election process).

      2.     Plaintiff has made out a prima facie case that each of these violations may have affected the outcome of the December 8, 2002 election, and Local 527-S has not countered with tangible evidence that the violations did not in fact affect the result.  See Chao v. Local 54, Hotel Employees & Rest. Employees Int'l Union, 166 F. Supp. 2d 109, 123-24 (D.N.J. 2001).

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Summary Judgment [Doc. No. 14] and **DENIES** Defendant's Motion for Summary Judgment [Doc. Nos. 11 and 18].

The Court further **DECLARES** that the Defendant's December 8, 2002 election is void and the Court **ORDERS** that a new election be conducted under the supervision of the Plaintiff.  Said election shall take place within 120 days from the entry of this Order and in compliance with the union's constitution and by-laws.

               SO ORDERED this 2nd day of February, 2005.

               *s/  CLARENCE COOPER*
               CLARENCE COOPER
               UNITED STATES DISTRICT JUDGE